Filed 6/6/13  P. v. Candelaria CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>VERDI STAN CANDELARIA,<br><br>Defendant and Appellant. | F063674<br><br>(Super. Ct. No. 10-CM7401)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County.  Donna Tarter and Robert S. Burns, Judges.*

Robert B. Bartlett for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and John W. Powell, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Judge Burns ruled on the motion to dismiss; Judge Tarter presided over the trial.

A jury convicted appellant Verdi Stan Candelaria of 13 various sexual offenses involving his young niece, M.C. Candelaria claims that the filing of an amended complaint prior to the commencement of trial constitutes a vindictive prosecution and the trial court erred in denying his motion to dismiss. He also contends the trial court abused its discretion in the admission of evidence of an uncharged offense. We disagree with his contentions and affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

Candelaria lived in a converted garage, which the family referred to as a den, in the home of his parents. M.C. lived with her mother, stepfather, and brother and often would visit her grandparents on holidays, birthdays, and during the summer.

One night, when she was nine, M.C. was lying on a futon in Candelaria's room watching television. Candelaria placed his hand on the lower part of M.C.'s stomach and told her he used to touch his girlfriend in the same way. M.C. later fell asleep on the futon.

Later that night, she awoke when she felt Candelaria's hand beneath her underwear applying pressure to her body. Candelaria inserted his finger in her vagina and moved it around. M.C. did not tell anyone about Candelaria's behavior because she feared she would not be believed and her family would turn against her. Later that day, she cut her wrist so she would remember the incident.

When M.C. was in seventh grade, she and her brother were spending the night at their grandparents' house. She knew she would have to sleep in the same room again. M.C. was sitting on the futon, while her brother and Candelaria watched television. M.C. fell asleep. When M.C. awoke later that night, the futon had been unfolded into a flat position. Candelaria was lying next to her, and he had his hand on her stomach, moving his hand toward her vagina. He inserted his finger into her vagina. When she tried to get away, Candelaria held her down. M.C. never told anyone about the incident.

2.

Candelaria periodically would send M.C. text messages, saying things like "tummy rub" or "hugs and kisses." M.C. never responded to the texts.

There were another 10 to 12 times that Candelaria molested M.C. Each incident occurred on the futon between the hours of 12:00 a.m. and 2:00 a.m., each started when M.C. was asleep, and each time Candelaria put his finger inside her vagina. M.C. kept track of each molestation incident by cutting a mark into her arm each time. She started at the wrist and worked up her arm.

After the seventh grade, M.C. stopped going to her grandparents' house. Subsequently, M.C. began seeing a counselor. She had been sent because she was cutting herself, smoking, and drinking. M.C. eventually told the counselor and then her mother about the molestations. Later, Candelaria sent a text message to M.C. asking her to forgive him.

After it was reported that Candelaria had molested M.C., Corporal Laura Duran began investigating. Duran interviewed Candelaria ,who claimed M.C. had slept with him on the futon two or three times. He placed his hand on her stomach once because she wanted him to. He denied ever touching her vagina.

Duran asked Candelaria if he had any contact with M.C.'s friends. He indicated he communicated with underage girls on MySpace and through social networking sites, but also claimed his nephew would add people without his knowledge.

Duran also looked at M.C.'s arm and observed a row of scars from carvings on her left arm. There were nine or 10 individual scars that went from the wrist to the middle of the forearm.

M.C.'s brother testified that after it was reported Candelaria had molested M.C., his father told M.C. and him that he and their grandfather wanted M.C. to drop the charges because she would someday forgive Candelaria.

M.C.'s half sister, A.C., testified that one time, while she was sleeping at her grandparents' house, Candelaria removed the blanket covering her while she slept. She was in her underwear. He took a picture of her after he removed the blanket and showed it to her.

Candelaria testified in his own defense. He denied doing anything inappropriate with M.C. He also claimed the picture of A.C. showed only the top of her underwear and included her brother sleeping next to her.

On October 14, 2010, the Kings County District Attorney filed an information charging Candelaria with unlawful sexual penetration of a child under 10 years of age, continuous sexual abuse of a child, and two counts of committing an act of sexual penetration against a person who was under 14 years of age and more than 10 years younger than Candelaria. It was alleged that two of the counts constituted serious and violent felonies.

On November 18, 2010, during a pretrial settlement conference, Candelaria rejected the People's offer of a plea agreement. Subsequently, the People filed an amended complaint setting forth 13 separate sexual offenses: two counts of committing an act of sexual penetration against a person under the age of 14 years and more than seven years younger than Candelaria (Pen. Code, § 269, subd. (a)(1)),[1] two counts of committing an act of sexual penetration against a person who was under the age of 14 years and more than 10 years younger than Candelaria (§ 289, subd. (j)), two counts of committing an act of sexual penetration by means of force, violence, duress, or fear of immediate and unlawful bodily injury (*id.*, subd. (a)(1)), two counts of committing an act of sexual penetration against a person who was unconscious (*id.*, subd. (d)), two counts of committing a lewd and lascivious act upon a child under the age of 14 (§ 288, subd. (a)), two counts of committing a lewd and lascivious act upon a child by means of force,

_____

[1]All further statutory references are to the Penal Code unless otherwise stated.

4.

violence, duress, or threat of great bodily harm (*id.*, subd. (b)(1)), and one count of engaging in three or more acts of substantial sexual conduct or lewd and lascivious conduct while Candelaria was living with, or had recurring access to, the child. (§ 288.5, subd. (a)). It also was alleged that nine of the counts were serious and violent felonies.

On January 14, 2011, Candelaria filed a motion to dismiss on the basis of vindictive prosecution. The trial court denied the motion after a hearing.

On July 29, 2011, the jury found Candelaria guilty of two counts of violating section 288, subdivision (a), two counts of violating section 288, subdivision (b)(1), and the section 288.5 subdivision (a) offense. On the remaining counts, Candelaria was convicted of lesser offenses, including two counts of attempting to violate section 289, subdivision (j), two counts of attempting to violate section 289, subdivision (a)(1), two counts of attempting to violate section 289, subdivision (d), and two counts of attempting to violate section 269, subdivision (a)(1).

On September 23, 2011, the trial court sentenced Candelaria to a total term of 32 years in state prison.

## DISCUSSION

Candelaria raises two main issues in this appeal. First, Candelaria contends the filing of an amended complaint prior to the commencement of trial constitutes a vindictive prosecution and the trial court erred in denying his motion to dismiss the charges. Second, he argues the trial court abused its discretion when it allowed A.C. to testify regarding a photograph he took of her while she was sleeping. He asserts this incident did not qualify as a sexual offense and therefore was not admissible pursuant to Evidence Code section 1108, or if admissible, the testimony should have been excluded pursuant to Evidence Code section 352.

## I.    Vindictive Prosecution

In an e-mail sent to defense counsel on December 23, 2010, the prosecutor stated in part that an amended pleading would be filed "charging the same conduct under various additional statutes that were not originally charged (at a time when I thought there was hope of a pre-trial resolution)." The e-mail also stated, "However, since we are going to proceed to a jury trial, I have included all the charges that I believe are applicable to the evidence." The e-mail concluded, "This may or may not increase your client's exposure, depending on how the judge chooses to sentence him, if he is convicted." On January 4, 2011, a first amended complaint was filed against Candelaria setting forth the additional charges described in the e-mail.

According to Candelaria, the filing of an amended charging document before commencement of trial, but after he had rejected a plea bargain, was a vindictive prosecution designed to punish him for exercising his right to a trial. We disagree.

In the case of *Bordenkircher v. Hayes* (1978) 434 U.S. 357 (*Bordenkircher*), the United States Supreme Court considered an allegation of vindictiveness in the pretrial setting. In that case, the prosecutor had threatened that unless the defendant pled guilty, the prosecutor would return to the grand jury and pursue an additional charge that would greatly increase the defendant's potential punishment if convicted. It was undisputed the additional charge was supported by the evidence that had been in the prosecutor's possession when the original indictment was obtained and the additional charge was sought because the defendant refused to plead guilty. (*Id.* at pp. 358-359.)

The United States Supreme Court held that the prosecutor's conduct in *Bordenkircher* was proper. There is no due process violation when a prosecutor brings additional charges against a defendant who refuses to plead guilty at pretrial because there is no element of punishment. (*Bordenkircher, supra,* 434 U.S. at pp. 363-365.) The United States Supreme Court distinguished between a "unilateral imposition of a penalty

6.

upon a defendant who had chosen to exercise a legal right" versus the situation presented by "the give-and-take negotiation common in plea bargaining." (*Id.* at p. 362.)

In the case of *Twiggs v. Superior Court* (1983) 34 Cal.3d 360, 371, the California Supreme Court held that a defendant who demonstrates that the prosecution has increased the seriousness of the charges and thus the potential punishment following a mistrial or grant of a new trial has made a prima facie showing of prosecutorial vindictiveness. The prosecution then bears the burden of rebutting this presumption. (*Id.* at p. 371.) *Twiggs* distinguished between those cases where more serious charges were added before versus after the commencement of trial. (*Id.* at pp. 370, 373.)

Numerous California courts have followed *Twiggs* and have refused to find any presumption of vindictiveness for prosecutorial action taken before commencement of a trial. (See *People v. Bracey* (1994) 21 Cal.App.4th 1532, 1544; *People v. Matthews* (1986) 183 Cal.App.3d 458, 466-467; *People v. Farrow* (1982) 133 Cal.App.3d 147, 152 (*Farrow*).) As the United States Supreme Court recognized in *United States v. Goodwin* (1982) 457 U.S. 368, 381, "In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance."

Candelaria's argument regarding vindictive prosecution rests on a claim that a presumption of vindictiveness arises from the mere filing of amended charges prior to commencement of trial. There is no such presumption under the law. As the appellate court stated in *Farrow,* "If the assertion of such a claim required the prosecution to come forward with explanations of the motivations for exercise of its discretion to amend the charges, the defendant could delay the proceedings and deflect them from the true issue, the defendant's guilt or innocence." (*Farrow, supra,* 133 Cal.App.3d at p. 152.) Candelaria's claim of vindictive prosecution fails.

## II. Admission of Evidence Concerning Photograph

### *Factual Summary*

The People proposed to present testimony from A.C. While A.C., then 10 years old, was staying in the same home as Candelaria, she fell asleep under a blanket wearing only a T-shirt and underwear. The blanket was covering her entire body. The following morning, Candelaria showed A.C. a picture he had taken of her with his smartphone. The picture showed A.C. asleep, but the blanket had been removed to reveal her underwear. Candelaria laughed as he showed A.C. the picture.

Candelaria filed a motion in limine to exclude A.C.'s testimony on the grounds that the photographing of a child sleeping was not a sexual offense and therefore was inadmissible under Evidence Code section 1108. He also argued that the testimony was inadmissible under Evidence Code section 352 because it was not probative and was unduly prejudicial. The People maintained Candelaria's conduct constituted a violation of Penal Code section 311.3, sexual exploitation of a child, and/or Penal Code section 647.6, annoying or molesting a child.

The trial court conducted a hearing to determine the admissibility of evidence. Defense counsel argued that photographing A.C. in her underwear did not qualify as an offense under section 647.6 and was not sexual in nature. The trial court ruled that the evidence did not qualify as a sexual offense under section 311.3; however, it qualified as a violation of section 647.6.

When A.C. testified, no objection was raised to her testimony, except to two questions -- how she felt when shown the picture and what she thought about the picture. The trial court sustained both objections.

### *Analysis*

Evidence Code section 1108, subdivision (a) provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's

commission of another sexual offense or offenses is not made inadmissible … if the evidence is not inadmissible pursuant to [Evidence Code] Section 352."

Candelaria has failed to preserve the issue for appeal because he failed to object to A.C.'s testimony during the prosecutor's examination. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 159.) When an in limine motion to exclude evidence has been made and the evidence deemed admissible, the party seeking to exclude the evidence must object at the time the evidence is offered to preserve the issue for appeal. (*Ibid.,* citing *People v. Brown* (2003) 31 Cal.4th 518, 547.) Although Candelaria filed a motion in limine seeking to prevent A.C. from testifying, the defense raised no objection when A.C. testified.

We, however, conclude the evidence was admissible, regardless of any forfeiture.

Evidence a defendant committed another sex offense is relevant to the issue of his disposition or propensity to commit such offenses. (*People v. Reliford* (2003) 29 Cal.4th 1007, 1012.) "Evidence of a prior sexual offense is indisputably relevant in a prosecution for another sexual offense. 'In the determination of probabilities of guilt, evidence of character is relevant. [Citations.]' [Citation.] Indeed, the rationale for excluding such evidence is not that it lacks probative value, but that it is too relevant. 'It may almost be said that it is because of the indubitable relevancy of specific bad acts showing the character of the accused that such evidence is excluded. It is objectionable not because it has no appreciable probative value but because it has too much.' [Citation.]" (*People v. Fitch* (1997) 55 Cal.App.4th 172, 179; see *People v. Falsetta* (1999) 21 Cal.4th 903, 915 (*Falsetta*).) Our Legislature has determined that in sexual offense cases, the policy considerations favoring the exclusion of evidence of other sexual offenses are outweighed by the policy considerations favoring its admission, and that "the need for this evidence is 'critical' given the serious and secretive nature of sex crimes and the often resulting credibility contest at trial." (*Fitch,* at pp. 181-182.)

9.

Admission of evidence under Evidence Code section 1108 remains subject to an Evidence Code section 352 analysis, which permits the trial court, in its discretion, to exclude evidence if its probative value substantially is outweighed by the probability that its admission will necessitate undue consumption of time or create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. "The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence." (*People v. Karis* (1988) 46 Cal.3d 612, 638; see *People v. Yu* (1983) 143 Cal.App.3d 358, 377.) "Rather, the statute uses the word in its etymological sense of 'prejudging' a person or cause on the basis of extraneous factors. [Citation.]" (*People v. Farmer* (1989) 47 Cal.3d 888, 912, overruled on other grounds in *People v. Waidla* (2000) 22 Cal.4th 690, 724, fn. 6.)

Here, Candelaria claims his actions with A.C. did not constitute an uncharged offense, but at the same time he contends the testimony would have inflamed and prejudiced the jury. We address each argument separately.

Section 647.6, subdivision (a)(1) provides for the punishment of "[e]very person who annoys or molests any child under 18 years of age." Section 647.6, subdivision (a) does not require a touching (*People v. Memro* (1995) 11 Cal.4th 786, 871) but does require (1) conduct a "'normal person would unhesitatingly be irritated by'" (*People v. Carskaddon* (1957) 49 Cal.2d 423, 426, quoting *People v. McNair* (1955) 130 Cal.App.2d 696, 698), and (2) conduct "'motivated by an unnatural or abnormal sexual interest'" in the victim (*People v. Maurer* (1995) 32 Cal.App.4th 1121, 1127, quoting *In re Gladys R.* (1970) 1 Cal.3d 855, 867-868; see *People v. Lopez* (1998) 19 Cal.4th 282, 289 (*Lopez*).) "The forbidden annoyance or molestation is not concerned with the child's state of mind, but rather refers to the defendant's objectionable acts that constitute the offense. [Citation.]" (*Lopez,* at p. 290.) To sustain a conviction for annoying or molesting a child as proscribed by section 647.6, the perpetrator's actions need not be

10.

lewd in themselves, and actual touching of the child is not required. (*People v. Thompson* (1988) 206 Cal.App.3d 459, 463-468.)

It is undisputed that A.C. was under the age of 18 at the time Candelaria photographed her. He contends, however, that a normal person would not be irritated by his conduct and his conduct was not motivated by an abnormal or unnatural sexual interest in A.C. He maintains that "[t]he taking and showing of photographs to one another is conduct that occurs every day." Photographs of the type Candelaria took of A.C., however, are not the type that normally are taken and shown.

A preponderance of the evidence supports the trial court's finding that a normal person would, without hesitation, have been irritated by Candelaria's conduct and that Candelaria's actions were motivated by an unnatural or abnormal sexual interest in A.C. (See *Lopez, supra,* 19 Cal.4th at pp. 289-291.) The photograph in question was not merely a photograph of a child sleeping. To obtain the photograph, Candelaria had to remove the blanket from A.C. so as to expose the child to full view of the camera, while the child was wearing only underwear. This action was a deliberate invasion of privacy that would irritate a normal person.

Deliberately removing the blanket from A.C. so that the child could be viewed and photographed while only partially clothed in underwear also was sufficient to demonstrate the conduct was motivated by an unnatural or abnormal sexual interest in A.C. Had Candelaria merely wanted a photograph of A.C. while sleeping, there would have been no need to remove the blanket or view A.C. in a state of partial undress.

We also reject Candelaria's Evidence Code section 352 contention. The charged and uncharged offenses were committed a few years apart and shared many similarities. Both were committed late at night; the victims were Candelaria's young nieces; the conduct occurred while the nieces were staying at Candelaria's home; and conduct took place or was initiated by Candelaria while the girls were sleeping. In addition, both girls were about the same age when the conduct occurred—A.C. was 10 and M.C. was nine

11.

when Candelaria began molesting her. There was no undue consumption of time as A.C. was the only witness and her testimony covered less than seven full pages of the reporter's transcript. (*People v. Harris* (1998) 60 Cal.App.4th 727, 737-741.)

The precise reason for admission of evidence under Evidence Code section 1108 is that "sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence." (*Falsetta, supra*, 21 Cal.4th at p. 915.) Thus, the intent of Evidence Code section 1108 is "to assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility." (*Falsetta,* at p. 911.)

Candelaria also asserts that A.C.'s testimony "inflamed the jury" while offering nothing "of probative value." He is mistaken. A.C.'s brief testimony about being photographed in her underwear, covering less than seven full pages in a transcript of over 1,000 pages, hardly was likely to inflame and prejudice the jury unduly on the charged offenses, which were more serious and involved allegations that Candelaria had sexually penetrated the victim, M.C.

Moreover, the jury properly was instructed on the use of A.C.'s testimony. We presume the jurors correctly applied the instructions given. (*People v. Pescador* (2004) 119 Cal.App.4th 252, 261.) This presumption is borne out by the jury's not convicting Candelaria of all charged offenses. He was convicted of five charged offenses and of lesser offenses on the remaining eight counts, a result not to be expected from a jury that was unduly inflamed or prejudiced.

An exercise of trial court discretion under Evidence Code section 352 is reviewable only for abuse and "will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. [Citation.]" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.) Evidence of Candelaria's prior offense properly was before the jurors for their credibility assessment.

12.

**DISPOSITION**

The judgment is affirmed.

_____
CORNELL, Acting P.J.

WE CONCUR:


_____
GOMES, J.


_____
POOCHIGIAN, J.

13.